01

02

03

04

05                          UNITED STATES DISTRICT COURT
                            WESTERN DISTRICT OF WASHINGTON
06                                      AT SEATTLE

07  CLIFFORD GOODWIN,                        )    CASE NO.: C05-1723-JCC
                                             )
08           Petitioner,                     )
                                             )
09           v.                              )    REPORT AND RECOMMENDATION
                                             )
10  DOUG WADDINGTON,                         )
                                             )
11           Respondent.                     )
    _____ )
12

13                                     I

14          Petitioner Clifford Goodwin proceeds *pro se* in this 28 U.S.C. § 2254 action.  He

15  challenges his 2002 conviction of rape in the first degree with a deadly weapon enhancement.

16  (Dkt. 5.)  Respondent argues that petitioner failed to properly exhaust a number of his claims and

17  that his exhausted claims lack merit.  (Dkt. 14.)  Petitioner submitted a reply to respondent's

18  answer.  (Dkt. 17.)  Having reviewed the record in its entirety, including the state court record,

19  the Court recommends that the petition be denied and this matter dismissed with prejudice.

20                                     II

21          The Washington Court of Appeals summarized the facts surrounding petitioner's

22  conviction and sentence as follows:

REPORT AND RECOMMENDATION
PAGE -1

01          In 1998, S.F. was brutally attacked and raped.  During the subsequent
02  investigation, police officers recovered certain evidence, including S.F.'s semen-
    stained underpants, a portion of which, later identified as "GRF 2," was submitted to
03  the Washington State Patrol crime laboratory for deoxyribonucleic acid (DNA)
    testing.  The crime went unsolved and without a primary suspect until 2001, when
04  DNA extracted from a blood sample taken from Goodwin matched the DNA profile
    of the rapist.  Goodwin was charged with first degree rape.

05          Prior to the scheduled trial date, Goodwin's trial counsel requested a
06  continuance so that a lab in California, named Technical Associates, Inc., could
    analyze the DNA testing performed at the Washington State Patrol crime lab.  The
07  trial court found good cause for the continuance, noting, "obviously it would be akin
    to malpractice on the part of any defense attorney to not investigate the DNA in the
08  way [defense counsel] had indicated that she wishes to do so."  Trial was rescheduled
    for March 1, 2002.

09          Several additional trial continuances were thereafter granted so that the
10  defense DNA expert could complete its review of the procedures employed and
    documentation prepared by the Washington State Patrol crime lab.  On each occasion,
11  the continuance was granted over the personal objection of Goodwin.

12          On March 29, 2002, Goodwin's trial counsel moved for another continuance
    to allow for independent DNA testing by Technical Associates, Inc.  The motion was
13  granted, once again over Goodwin's personal objection, and trial was eventually reset
    for June 24, 2002.  Meanwhile, a stipulated order was entered on April 25, 2002 that
14  requested specific items be released to Technical Associates Inc., for examination and
    testing:

15          ITEM NUMBER                   DESCRIPTION

16          GRF 1                         A piece of fabric from a stain off a shirt
                                          (part of item KJZ-13) reported used as a
17                                        secondary reference same for [S.F.].

18          GRF 2                         A cutting removed from a pair of
                                          underpants (part of item KJZ-7) where
19                                        spermatozoa were previously identified.

20                                        Saliva sample of defendant Clifford
                                          Goodwin obtained from the defendant at
21                                        the Snohomish County jail by Detective
                                          Steve  Rider,  Lynnwood  Police
22                                        Department.

REPORT AND RECOMMENDATION
PAGE -2

01          On June 24, Goodwin moved to dismiss the case pursuant to CrR 8.3(b).
02   Goodwin asserted that when Technical Associates, Inc., opened the sealed envelope
     received from the Washington State Patrol crime laboratory it contained a note
03   indicating the entire sample had been consumed by the crime lab during initial testing.
     Noting his trial date had been continued numerous times over his personal objection,
04   Goodwin argued the State mismanaged the case by failing to notify him that there was
     no DNA material from Item GRF 2 available for retesting.  The trial court denied the
05   motion for dismissal.  At the jury trial that followed, Goodwin was found guilty as
     charged.  This appeal followed.

06   (Dkt. 16, Ex. 3 at 1-3).

07          Petitioner appealed to the Washington Court of Appeals.  Respondent asserts its inability

08   to locate petitioner's appellate brief.  However, respondent notes that only petitioner's first claim

09   in this petition was contained in his petition for review on direct appeal and, therefore, that any

10   additional claims were not properly exhausted through presentation to the Washington Supreme

11   Court.

12          Petitioner also filed a statement of additional grounds for review in the Washington Court

13   of Appeals:

14                              Additional Ground 1

15   Ineffective assistance of counsel/violation due process, defense counsel stated she
     didn't get a hard copy of the DNA independent testing because she would have been
16   required to pass that on to the state.  I did request to see the results.  I believe
     independent testing never took place however the notes that were sent to independent
17   lab was duplicated to make authentic.  Retesting never done prior to trial.  Defense
     counsel stated it was a matter of her trial strategy.

18

19                              Additional Ground 2

20   Ineffective assistance of counsel/defense counsel took part in delaying trial when sent
     independent lab the notes from state testing to analyze the DNA testing done being
21   uncertain if their should be a retest of the evidence.  Defense counsel quoted, "I don't
     want to ask for that without having any basis."  Defense counsel had no knowledge
22   on how to handle the case.

REPORT AND RECOMMENDATION
PAGE -3

01  (*Id.*, Ex. 2.)  The Washington Court of Appeals affirmed petitioner's conviction and sentence.

02  (*Id.*, Ex. 3.)

03        Petitioner moved for reconsideration, presenting the following ground for review:

04        APPELLANT'S RIGHT TO PREPARE A DEFENSE FOR A FAIR TRIAL,
          GUARANTEED BY WASHINGTON'S DUE PROCESS CLAUSE, ART. 1 § 3,
05        AND THE 14TH AMENDMENT TO THE U.S. CONSTITUTION, WAS
          VIOLATED WHEN THE COURT OF APPEALS HELD THE TRIAL COURT DID
06        NOT ABUSE ITS DISCRETION IN DENYING THE CrR 8.3 (b) MOTION TO
          DISMISS KNOWING THE STATE BREACHED A PRE-TRIAL STIPULATION
07        AND COURT ORDER FOR DISCOVERY, RESULTING IN EGREGIOUS
          MISMANAGEMENT OF EXCULPATORY EVIDENCE, THUS,
08        PREJUDICIALLY CAUSING APPELLANT RIGHT TO A SPEEDY TRIAL TO
          BE VIOLATED.

09

10  (*Id.*, Ex. 4 (supporting citations omitted.))  The Washington Court of Appeals denied his motion.

11  (*Id.*, Ex. 5.)

12        Petitioner petitioned for review with the Washington Supreme Court, raising the following

13  grounds for review:

14        Petitioner's rights to prepare a defense for a fair trial, guaranteed by Washington's
          due process clause, Art I § 3, and the 14th Amendment to the U.S. Constitution, was
15        violated when the Court of Appeals held the Trial Court did not abuse its discretion
          when denying the CrR 8.3(b) motion to dismiss contrary to well established law
16        knowing the State breached a pre-trial stipulation and court order resulting in
          egregious mismanagement of exculpatory evidence intending to prejudicially cause
17        Petitioner's right to a speedy trial to be violated[.]

18  (*Id.*, Ex. 6.)  The Washington Supreme Court denied the petition. (*Id.*, Ex. 7.)  On January 16,

19  2004, the Washington Court of Appeals issued its mandate.  (*Id.*, Ex. 8.)

20        Petitioner filed a personal restraint petition on July 9, 2004, raising the following grounds

21  for relief:

22        Petitioner was denied his Sixth Amendment Constitutional Right to Effective

REPORT AND RECOMMENDATION
PAGE -4

01    Assistance of Counsel when Defense counsel failed to introduce evidence to support
      her trial strategy.

02

03    . . .

04    The petitioner's 5th, 6th, and 14th Amendment constitutional right to Due Process
      was violated when the State withheld exculpatory evidence.

05    . . .

06    Petitioner also asserts that the cumulative effect of these errors also affected the
      outcome of the trial and therefore denied his right to a fair trial thus, his conviction

07    and sentence is unconstitutional and relief should be granted in part D of this petition.

08    (*Id.*, Ex. 9.)  The Washington Court of Appeals denied the petition.  (*Id.*, Ex. 10.)

09        In a petition for review, petitioner raised the following grounds:

10    A.    The petitioner was denied his Sixth Amendment Constitutional Right to
            effective assistance of counsel when counsel failed to introduce evidence to

11          support her trial strategy.

12    B.    The petitioner's Fifth, Sixth, and Fourteenth Amendment Constitutional right
            to Due Process was violated when the State Withheld exculpatory evidence.

13

14    (*Id.*, Ex. 11.)  The Washington Supreme Court denied review.  (*Id.*, Ex. 12.)  The Washington

15    Court of Appeals issued a certificate of finality on March 16, 2005.  (*Id.*, Ex. 13.)

16        Petitioner filed a second personal restraint petition directly in the Washington Supreme

17    Court, raising the following grounds for review:

18    GROUND ONE:

19        Petitioner's fifth amendment rights, as applied to the states through the
      fourteenth amendment, to remain silent at trial, to be convicted solely on the basis of

20    evidence adduced at trial, and to due process of law were violated when the state used
      Det. Rider, in violation of ER 615, to comment on Mr. Goodwin's in-court behavior,

21    and then relied on that "testimony" during closing argument.

22

REPORT AND RECOMMENDATION
PAGE -5

01 GROUND TWO:

02       Petitioner's attorney rendered ineffective assistance of counsel, in violation of
the sixth amendment, when she failed to object to the state's use of Detective Rider's
03 presence in the courtroom to violate Mr. Goodwin's fifth amendment rights as stated
above.

04

05 (*Id.*, Ex. 14.)  The Washington Supreme Court dismissed the petition.  (     *Id.*, Ex. 15.)   The

06 Washington Supreme Court subsequently denied petitioner's motion to modify and issued its

07 certificate of finality on June 8, 2005.  (*Id.*, Exs. 16-18.)

08                                              III

09    Petitioner now raises the following grounds for habeas relief:

10 GROUND ONE:  Due process violation, Gross Governmental Mismanagement in
handling and testing the DNA evidence which breached a stipulated court order and
11 caused numerous trial continuances over defendant's objections violating his right to
a speedy trial.

12

13 GROUND TWO: Petitioner's Sixth Amendment right to effective assistance of
counsel was violated when defense counsel failed to independently test all DNA
evidence.

14

15 GROUND THREE: Conviction obtained by the unconstitutional failure of the state
to disclose all evidence exculpatory to the defendant.

16 GROUND FOUR: Prosecutorial misconduct deprived defendant of his right to a fair
trial; defense counsel was ineffective for failing to object.

17

18 (Dkt. 17.)[1]  The Court finds no basis for an evidentiary hearing.  For the reasons described below,

19 the Court concludes that petitioner's claims lack merit.

20

_____

21       [1] Respondent construed petitioner's habeas petition to contain additional, expanded
grounds for review.  (*See* Dkt. 1 and Dkt. 14 at 7-8.)  However, in his reply, petitioner clarified
22 that his grounds for review are limited to those delineated above.  (*See* Dkt. 17.)

REPORT AND RECOMMENDATION
PAGE -6

01                          Exhaustion of State Remedies

02          "An application for a writ of habeas corpus on behalf of a person in custody pursuant to

03  the judgment of a State court shall not be granted unless it appears that . . . the applicant has

04  exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  To

05  exhaust state remedies, a petitioner must present each of his claims to the state's highest court.

06   *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  A petitioner must "alert the state courts to

07  the fact that he was asserting a claim under the United States Constitution." *Hiivala v. Wood*, 195

08  F.3d 1098, 1106 (9th Cir. 1999) (citing *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)).  "The

09  mere similarity between a claim of state and federal error is insufficient to establish exhaustion."

10  *Id.* (citing *Duncan*, 513 U.S. at 366).  "Moreover, general appeals to broad constitutional

11  principles, such as due process, equal protection, and the right to a fair trial, are insufficient to

12  establish exhaustion."  *Id.* (citing *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996)).

13          Pursuant to RCW 10.73.090, no petition or motion for collateral attack on a judgment and

14  sentence in a criminal case may be filed more than a year after the judgment becomes final.

15  Additionally, if the state court expressly declined to consider the merits of a ground based on an

16  independent and adequate state procedural rule, or if an unexhausted ground would now be barred

17  from consideration by the state court based on such a rule, a petitioner must demonstrate a

18  fundamental miscarriage of justice, or cause, *i.e.* some external objective factor that prevented

19  compliance with the procedural rule, and prejudice, *i.e.* that the claim has merit.  *See Coleman v.*

20  *Thompson*, 501 U.S. 722, 735 n.1, 749-50 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989).

21          Respondent argues that petitioner failed to exhaust the "speedy trial" aspect of his first

22  ground for relief and the entirety of his fourth ground for relief, and that both claims are now

REPORT AND RECOMMENDATION
PAGE -7

01 procedurally barred.  Petitioner asserts that he properly exhausted all of his claims.

02       It is questionable whether petitioner presented his speedy trial claim as a federal

03 constitutional violation in either his motion for reconsideration to the Washington Court of

04 Appeals or his petition for review in the Washington Supreme Court.  (Dkt. 16, Exs. 4 & 6.)  [2]

05 While expressly casting the evidence mismanagement aspect of this ground for relief in both

06 federal and state terms, petitioner points solely to state law in addressing the alleged speedy trial

07 violation.  (*Id.*)  However, because petitioner alleges evidence mismanagement resulted in the

08 speedy trial violation, the Court considers these intertwined claims exhausted and appropriately

09 addressed as a single claim on the merits.

10       Respondent does not dispute that petitioner raised his fourth ground for relief before the

11 Washington Supreme Court in his second personal restraint petition.  ( *Id.*, Ex. 14.)  Instead,

12 respondent argues that, in first raising the argument in the supreme court, petitioner deprived the

13 Washington Court of Appeals the opportunity to rule on the claim.  However, the Court also finds

14 that petitioner properly exhausted his fourth ground for relief.

15       Washington Rules of Appellate Procedure confer on the Washington Supreme Court and

16 Washington Court of Appeals original concurrent jurisdiction in personal restraint proceedings in

17 which the death penalty has not been decreed.  RAP 16.3(c).  While the supreme court ordinarily

18 exercises its jurisdiction by transferring the petition to the court of appeals, *see* RAP 16.3(c), in

19 this case, the supreme court decided to rule on the petition.  (Dkt. 16, Ex.15.)  Accordingly,

20 ─────────────────

21       [2] Respondent asserts that this claim was presented as a federal constitutional claim in the
Washington Court of Appeals, but not the Washington Supreme Court.  However, the

22 undersigned finds no material difference between these two petitions warranting such a conclusion.
(*See* Dkt. 16, Exs. 4 & 6.)

REPORT AND RECOMMENDATION
PAGE -8

01    because Washington State's highest court considered the merits of this claim, it was properly

02    exhausted and is appropriate for this Court's review.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801

03    (1991) ("If the last state court to be presented with a particular federal claim reaches the merits,

04    it removes any bar to federal-court review that might otherwise have been available."); *Casey v.*

05    *Moore*, 386 F.3d 896, 916 n.18 (9th Cir. 2004) ("Of course, a claim is exhausted if the State's

06    highest court expressly addresses the claim, whether or not it was fairly presented.") (citing

07    *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).

08    <u>Merit of Petitioner's Claims</u>

09        This Court's review of the merits of petitioner's claims is governed by 28 U.S.C. §

10    2254(d)(1).  Under that standard, the Court cannot grant a writ of habeas corpus unless a

11    petitioner demonstrates that he is in custody in violation of federal law and that the highest state

12    court decision rejecting his grounds was either "contrary to, or involved an unreasonable

13    application of, clearly established Federal law, as determined by the Supreme Court of the United

14    States."  28 U.S.C. § 2254(a) and (d)(1).  The Supreme Court holdings at the time of the state

15    court decision will provide the "definitive source of clearly established federal law[.]"  *Van Tran*

16    *v. Lindsey*, 212 F.3d 1143, 1154 (9th Cir. 2000), *overruled in part on other grounds by Lockyer*

17    *v. Andrade*, 538 U.S. 63 (2003).   A state-court decision is contrary to clearly established

18    precedent if it "'applies a rule that contradicts the governing law set forth in'" a Supreme Court

19    decision, or "'confronts a set of facts that are materially indistinguishable'" from such a decision

20    and nevertheless arrives at a different result.   *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting

21    *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

22    */ / /*

REPORT AND RECOMMENDATION
PAGE -9

01 A.    Evidence Mishandling

02       Petitioner's first and third grounds for relief raise due process violations stemming from

03 the State's alleged mishandling of the evidence, and a resulting delay in petitioner's trial.[3]

04 Respondent argues that petitioner fails to show any prejudice resulting from the alleged

05 mishandling of the evidence.

06       On direct appeal, the Washington Court of Appeals disagreed with petitioner's contention

07 that the State's failure to notify him regarding insufficient testing material constituted

08 governmental mismanagement:

09       Our review of the record indicates that the State's actions were not so
   egregious as to warrant dismissal of the rape charge against Goodwin under
10 CrR8.3(b).  While it is true, as Goodwin argues, that actions of the employees of the
   crime lab are considered actions of the State, State v. Woods, 143 Wn.2d 561, 583,
11 23 P.3d 1046 (2001), there is no showing that those actions with respect to handling
   of Item GRF 2 were unreasonable.  Goodwin has not alleged, must less established,
12 that the State violated any court-ordered obligations or rules of discovery.  Nor is
   there anything to indicate that the State made assurances regarding the possible
13 retesting of GRF 2.  As the State points out, any delay resulting from the fact that
   GRF 2 could not be retested by Technical Associates, Inc., cannot fairly be attributed
14 solely to the State.  If there was any lack of diligence, it was shared equally by
   Goodwin and the State.  Goodwin could have inquired if there was sufficient DNA
15 material from GRF 2 to be retested long before March 29, but didn't.  Moreover, it
   appears Goodwin initially refused to provide a sample of his saliva for DNA testing
16 purposes as specifically ordered by the trial court on April 25.  The State complied
   with Goodwin's request as best it could.  Upon learning that GRF 2 no longer
17 contained a viable DNA sample, the State immediately sent the remaining portion of
   S.F.'s underpants with approximately half of the original semen stain still intact to

18

_____

19       [3] Petitioner's third ground for relief asserts generally an "unconstitutional" failure to
   disclose exculpatory evidence.  However, petitioner clarifies in his reply that this ground for relief
20 is associated with what respondent construed as separate alleged due process violations.  (See Dkt.
   17 at 4 and Dkt. 14 at 7.)  Also, both this ground and petitioner's first ground for relief concern
21 an alleged insufficient amount of evidence for testing.  (See Dkt. 1 at 5A and 6.)  Accordingly, like
   respondent, the Court construes these grounds for relief as both asserting due process violations
22 associated with the State's alleged mishandling of the evidence.

REPORT AND RECOMMENDATION
PAGE -10

01      Technical Associates Inc., for testing.  Therefore, the State's actions did not amount
         to misconduct.

02
                 Even assuming that the State's actions constituted mismanagement, dismissal
03      would not be appropriate.  Goodwin, citing State v. Michielli, 132 Wn.2d 229, 937
         P.2d 587 (1997), argues that the State's actions might have forced him into waiving
04      his speedy trial rights.  Michielli, however, is a "Hobson's Choice" case, inapplicable
         here.  Unlike the situation in Michielli, there is no showing that Goodwin was unfairly
05      or impermissibly prejudiced.  No new facts were interjected in to the proceeding as
         a result of the delay in obtaining Technical Associates Inc.'s DNA test results. [We
06      note that Technical Associates Inc., was able to conduct an independent DNA test
         using the remaining portion of the stain on S.F.'s underpants and its results matched
07      those reached by the Washington State Patrol Crime laboratory.] The record shows
         that Goodwin received, by all accounts, a fair trial.  Under the circumstances we find
08      no manifest abuse of discretion[.]

09   (Dkt. 16, Ex. 3 at 4-5 (internal footnote included in text.))

10          The court also addressed petitioner's claim that the state withheld exculpatory evidence

11   in addressing his first personal restraint petition:

12              Goodwin next contends that his constitutional rights were violated when the
         State withheld exculpatory evidence.  Due process requires that criminal defendants
13      be given a meaningful opportunity to present a complete defense.  To comport with
         due process, the prosecutor has a duty to preserve material exculpatory evidence for
14      use by the defense.  However, there is no "absolute duty to retain and to preserve all
         material that might be of conceivable evidentiary significance in a particular
15      prosecution."  To be material and exculpatory, the evidence's exculpatory value must
         have been apparent before the evidence was destroyed and must be of such a nature
16      that comparable evidence could not be reasonably obtained.  If the evidence is only
         potentially useful, the failure to preserve it does not deny due process unless the State
17      acted in bad faith.

18              Goodwin argues that the State failed to preserve enough of the evidence
         collected for complete and accurate DNA testing.  There is no showing that these
19      items had any exculpatory value.  As previously noted, Goodwin does not dispute that
         his DNA was extracted from a semen stain found on the rape victim's underwear.
20      This evidence alone is compelling.  Nor has Goodwin attempted to explain why
         additional DNA testing was necessary to ensure he received a fair trial.  There was no
21      due process violation.

22   (Dkt. 16, Ex. 10 at 3-4 (internal footnotes containing citations omitted.))

REPORT AND RECOMMENDATION
PAGE -11

01    Petitioner fails to show that the state court decisions were contrary to, or involved an

02  unreasonable application of, clearly established federal law.  As argued by respondent, and as

03  found by the state courts, petitioner fails to establish any prejudice resulting from the alleged

04  mishandling of the evidence by the State.  Indeed, testing ultimately conducted by the independent

05  lab confirmed the State lab's conclusion that the semen on the victim's underwear belonged to

06  petitioner.  (*See*, *e.g.*, Dkt. 16, Ex. 20 at 303 and 344 (transcript of proceedings reflecting that the

07  Washington State Patrol lab and Technical Associates Inc. reached the same results in testing the

08  evidence.)) Therefore, the Court recommends that petitioner's first and third grounds for relief be

09  denied.

10  B.    Ineffective Assistance of Counsel

11    The Sixth Amendment guarantees a criminal defendant the right to effective assistance of

12  counsel.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Courts evaluate claims of

13  ineffective assistance of counsel under the two-prong test set forth in *Strickland*.  Under that test,

14  a defendant must prove that (1) counsel's performance fell below an objective standard of

15  reasonableness and (2) a reasonable probability exists that, but for counsel's error, the result of

16  the proceedings would have been different.  *Id*. at 687-694.

17    When considering the first prong of the *Strickland* test, judicial scrutiny must be highly

18  deferential.  *Id*. at 689.  There is a strong presumption that counsel's performance fell within the

19  wide range of reasonably effective assistance.  *Id*.  The Ninth Circuit has made clear that "'[a] fair

20  assessment of attorney performance requires that every effort be made to eliminate the distorting

21  effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to

22  evaluate the conduct from counsel's perspective at the time.'"  *Campbell v. Wood*, 18 F.3d 662,

REPORT AND RECOMMENDATION
PAGE -12

01  673 (9th Cir. 1994) (quoting *Strickland*, 466 U.S. at 689).

02      The second prong of the *Strickland* test requires a showing of actual prejudice related to

03  counsel's performance.  The reviewing court need not address both components of the inquiry if

04  an insufficient showing is made on one component.  *Strickland*, 466 U.S. at 697.  Furthermore,

05  if both components are to be considered, there is no prescribed order in which to address them.

06  *Id.*

07      Here, petitioner alleges ineffective assistance of counsel through his trial counsel's failure

08  to independently test all DNA evidence (ground 2), and to object to the testimony of a detective

09  as to his in-court behavior (part of ground 4).  Respondent counters that petitioner's trial

10  counsel's performance was objectively reasonable.

11      In considering petitioner's second ground for relief, the Washington Court of Appeals held

12  as follows:

13          [Goodwin] argues that he was denied his right to effective assistance of
    counsel when counsel failed to introduce sufficient evidence to support the defense

14      theory of the case.  "The purpose of the requirement for effective assistance of
    counsel is to ensure a fair and impartial trial."  In Washington, the <u>Strickland</u> test is

15      used for determining the effectiveness of counsel.  To satisfy this two-pronged test,
    a defendant bears the burden of proving both that trial counsel's performance was

16      deficient and that the deficiency prejudiced the defense.  In applying the test, courts
    indulge in a strong presumption that counsel's performance was effective.  The

17      presumption of counsel's effectiveness can be overcome, however, by showing
    counsel failed to conduct appropriate investigations.

18

19          "Failure to investigate or interview witnesses, or to properly inform the court
    of the substance of their testimony, is a recognized basis upon which a claim of

20      ineffective assistance of counsel may rest."  The defendant must show in the record
    the absence of legitimate or tactical reasons for counsel's conduct.

21          Goodwin points out that certain items processed or found during the rape
    investigation, including a strand of hair and vaginal swabs, were never submitted for

22      DNA testing.  Because defense counsel emphasized the failure by the State to test the

REPORT AND RECOMMENDATION
PAGE -13

01 | evidence, Goodwin argues his trial counsel should have had the items tested. This
02 | claim of deficient performance is too conclusory and speculative to establish ineffective assistance of counsel.

03 | There is no showing that trial counsel's performance was deficient, let alone
04 | that any deficiency prejudiced Goodwin. "[D]eficient performance is not shown by matters that go to trial strategy or tactics." By employing these tactics, defense counsel was able to call into question the adequacy of the police investigation and the
05 | strength of the State's case with little or no risk to Goodwin. After all, Goodwin acknowledges that the semen stain found on the rape victim's underwear matched his
06 | own DNA. At defense counsel's request, a DNA expert was hired to conduct an independent DNA test of the stain. The independent test results matched those
07 | reached by the Washington State Patrol crime laboratory. Goodwin has not explained why additional testing would likely have changed the outcome of his trial. Nothing
08 | suggests that someone else's DNA would be found on the evidence Goodwin now claims should have been tested.

09 |

10 | (Dkt. 16, Ex. 10 at 2-3 (internal footnotes containing citations omitted.))   The Washington

11 | Supreme Court further addressed this claim:

12 | [Mr. Goodwin] contends that his trial counsel was ineffective in emphasizing
13 | the State's failure to have certain items tested for DNA, while counsel herself failed to have those items tested. But as the Acting Chief Judge [of the Washington Court of Appeals] noted, the victim's semen-stained underpants were tested and found to
14 | contain DNA matching Mr. Goodwin's. Mr. Goodwin provides no record or other materials suggesting that additional items processed or found during the investigation,
15 | including a strand of hair and vaginal swabs, would have pointed to another suspect. There was thus no reason for counsel to risk having those items tested rather than
16 | simply to call into question the adequacy of the State's investigation and the strength of its case.

17 |

18 | Contrary to Mr. Goodwin's argument, this case is not similar to   *Alcala v. Woodford*, 334 F.3d 862 (9th Cir. 2003). There, counsel asserted an alibi defense but
19 | failed to present witnesses who could definitely say that the defendant was at another location at the time of the crime. One person that could have so stated was not called
20 | to testify. The defendant thus showed that counsel failed to present available exculpatory evidence. Mr. Goodwin makes no such showing here.

21 | (*Id.*, Ex. 12 at 1-2.)

22 | Petitioner fails to show that the state court decisions addressing his second ground for

REPORT AND RECOMMENDATION
PAGE -14

01  relief were contrary to, or involved an unreasonable application of, clearly established federal law.

02  As found by the state courts and as argued by respondent, petitioner fails to show that his trial

03  counsel's performance fell below an objective standard of reasonableness.  As such, the Court

04  recommends that petitioner's second ground for relief be denied.

05       With respect to the ineffective assistance of counsel claim in petitioner's fourth ground for

06  relief, the Washington Supreme Court held as follows:

07       Mr. Goodwin's claims both stem from the testimony of a detective who was
         present in the courtroom during trial.  The victim said that her assailant was left-

08       handed.  The detective testified that, in the course of the trial, he observed Mr.
         Goodwin use his left hand to write and perform other tasks.  He also said that, when

09       the victim testified that her assailant was left-handed, Mr. Goodwin put his pen down
         and pulled his left hand off of the table.  Mr. Goodwin argues that the prosecutor

10       committed misconduct in presenting this testimony and in referring to it in closing
         argument.  And he contends that his trial counsel was ineffective in not objecting to

11       it.

12       But even assuming, without deciding, that this evidence was improper, Mr.
         Goodwin must demonstrate that he was actually and substantially prejudiced by

13       constitutional error or that nonconstitutional error inherently resulted in a complete
         miscarriage of justice.  *In re Lord*, 123 Wn.2d 296, 303, 868 P.2d 835 (1994).  He

14       does not do so.  Mr. Goodwin complains that the detective's testimony attributed to
         him the "same rare trait" of left-handedness that the perpetrator possessed.  But

15       properly admitted evidence also attributed to Mr. Goodwin a far rarer trait: the
         perpetrator's DNA.  Mr. Goodwin does not show that, in light of all of the evidence,

16       the detective's testimony actually and substantially prejudiced him or resulted in a
         complete miscarriage of justice.

17

18  (Dkt. 16, Ex. 15 at 1-2.)  Again, petitioner fails to show that this decision was contrary to, or

19  involved an unreasonable application of, clearly established federal law.  As found by the

20  Washington Supreme Court, in light of the other evidence before the court – including DNA

21  evidence found on the victim's underwear, petitioner fails to show that any prejudice resulted from

22  his trial counsel's failure to object to the detective's testimony.  Therefore, the Court also

REPORT AND RECOMMENDATION
PAGE -15

01    recommends that the portion of petitioner's fourth ground for relief alleging ineffective assistance

02    of counsel be denied.

03    C.    <u>Prosecutorial Misconduct</u>

04          Finally, petitioner alleges that prosecutorial misconduct with respect to the above-

05    described testimony of the detective deprived him of his right to a fair trial (part of ground 4).

06    Prosecutorial misconduct is limited to the narrow issue of whether the conduct affected the jury's

07    ability to judge the evidence fairly, and therefore violated the due process right to a fundamentally

08    fair trial. *See Thompson v. Borg*, 74 F.3d 1571, 1576 (9th Cir. 1996). Here, as indicated above,

09    the Washington Supreme Court held that, in light of all of the evidence in this case – including

10    DNA evidence found on the victim's underwear, petitioner failed to show that the detective's

11    testimony "actually and substantially prejudiced him or resulted in a complete miscarriage of

12    justice." (Dkt. 16, Ex. 15 at 1-2.)  As with the preceding claims, the Court finds that petitioner

13    fails to show this conclusion is contrary to, or an unreasonable application of, clearly established

14    federal law, and recommends that the remaining portion of petitioner's fourth ground for relief

15    also be denied.

16                                              IV

17          For the reasons described above, petitioner's habeas petition should be denied and this

18    action dismissed with prejudice.  A proposed Order of Dismissal With Prejudice accompanies this

19    Report and Recommendation.

20          DATED this  13th  day of April, 2006.

21

22                                              Mary Alice Theiler
                                                United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE -16